IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | BANKRUPTCY NO. 23-10255 JCM |
| | : | |
| DONALD KENNETH CHRISPEN, II AND | : | HONORABLE JOHN C. MELARAGNO |
| ACACIA TATE CHRISPEN, | : | |
| Debtors | : | CHAPTER 13 |
| | : | |
| DONALD KENNETH CHRISPEN, II AND | : | DATE AND TIME OF HEARING: |
| ACACIA TATE CHRISPEN, | : | MAY 12, 2026 AT 1:30 PM |
| Movants | : | |
| | : | RESPONSES DUE: |
| v. | : | APRIL 27, 2026 |
| | : | |
| NO RESPONDENT | : | |

**REPORT OF VEHICLE FINANCING**

Attached hereto is the report of Financing with Credit Acceptance Corporation in connection with the purchase of a 2017 Ford Escape.


Respectfully Submitted,

QUINN ELDERKIN LAW FIRM


BY:   /s/ Michael S. Jan Janin
Michael S. Jan Janin, Esquire
PA Id. No. 38880
456 West 6th Street
Erie, PA 16507
Phone:  (814) 833-2222
Facsimile: (814)454-7411
mjanjanin@quinnfirm.com
Attorneys for Debtors, Donald Kenneth Chrispen
and Acacia Tate Chrispen

1736168

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## RETAIL INSTALLMENT CONTRACT-SIMPLE INTEREST FINANCE CHARGE

ACCOUNT #_____6484                                                                    LOT #_____

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| DONALD K CHRISPEN II<br>1051 NEWTON AVE<br>ERIE, PA 16511 | ACACIA CHRISPEN<br>1051 NEWTON AVE<br>ERIE, PA 16511 | BAYFRONT AUTOMOTIVE INC<br>3041 W 26TH ST<br>ERIE, PA 16506 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller. You may buy the vehicle described below for cash or credit. You have agreed to buy the Vehicle on credit. You agree to pay Us all amounts due under this Retail Installment Contract ("Contract"), including the Amount Financed plus Finance Charge, according to the payment schedule shown below. We will figure Your finance charges on a daily basis at a rate of _____20.49_____ % per year ("Contract Rate"). You also agree to the terms and conditions below (including the Truth in Lending Disclosures) and on the additional pages of this Contract. The Contract Rate may be negotiable with Us. You acknowledge delivery and acceptance of the Vehicle in good condition and repair.

| | Year and Make | Model | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2017 Ford | Escape | LIGHTNING | 1FMCU9GD4HUB25517 | 72,810 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit, including Your down payment of |
|---|---|---|---|---|
| 20.49 % | $ 12,593.94 | $18,627.36 | $31,221.30 | $ 1,200.00   is<br>$ 32,421.30 |

Payment Schedule: Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 66 | $473.05 | October 09, 2026   and same date of each following month. |

COPY OF ELECTRONIC ORIGINAL

**Security:** You are giving a security interest in the Vehicle being purchased.

**Late Charge:** If a payment is late, You will be charged 2% per month on the amount of the payment or payments that are late, not to exceed $30.

**Prepayment:** If You pay early, You will not have to pay a penalty.

**Additional Information:** Please read this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**BUYER'S NOTICE: If You do not meet Your Contract obligations, You may lose the Vehicle.**

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.**

**PROPERTY INSURANCE:** You must insure the Vehicle securing this Contract (see page 3 of this Contract). **YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US,** as more fully described on page 3.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PERSUANT HERETO OR WHICH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**DISPUTE RESOLUTION WITH ARBITRATION:** This Contract contains a Dispute Resolution Agreement including a Waiver of Jury Trial, Waiver of Class Actions, and an Arbitration Clause stating that, under certain circumstances, any Dispute You and We are unable to resolve through negotiation will be resolved by arbitration and not by court action. See the Dispute Resolution Agreement starting on Page 5 of this Contract for the full terms and conditions. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Dispute Resolution Agreement.

↪ Buyer Initials: _DKC_          Buyer Initials: _AC_   ↩

PENNSYLVANIA CREDIT ACCEPTANCE CORPORATION (09-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.                    PAGE 1 of 6
The original retail installment contract is assigned to Credit Acceptance Corporation.

↪ Buyer's Initials _____
↪ Buyer's Initials _____

Copy of Electronic Original
Not required to mail or fax this Page to Credit Acceptance

## ITEMIZATION OF AMOUNT FINANCED
### (A portion of these charges may be paid to or retained by Us.*)

1. Cash Price
Vehicle............................................................................................... $ 12,775.00 (A)
Cost of Optional Extended Warranty or Service Contract Paid to the Company named below*........... $ 4,031.00 (B)
Accessories......................................................................................... $ 0.00 (C)
Vehicle Delivery.................................................................................... $ N/A (D)
Charges for servicing, repairing or improving the motor vehicle................... $ N/A (E)
　　　　　　　　　　　　　　　　　　　　　Total Cash Price....................... $ 16,806.00 (1)

2. Taxes............................................................................................... $ 1,008.36 (2)

3. Down Payment Calculation:　**Cash Down Payment**........................ $ 1,200.00 (A)
Trade-In Description:　　　　　　　Gross Trade-In............ $ N/A (B)
VIN: N/A　　　　　　　　　　　　　Make: N/A
Model: N/A　　　　　　　　　　　　Payoff Made by Seller　$ N/A (C)
Net Trade-In (If negative number, insert "0" in line 3(D) and itemize difference in 5(G) below) (B-C) ... $ N/A (D)
Trade-In Description:　　　　　　　Gross Trade-In............ $ N/A (E)
VIN: N/A　　　　　　　　　　　　　Make: N/A
Model: N/A　　　　　　　　　　　　Payoff Made by Seller　$ N/A (F)
Net Trade-In (If negative number, insert "0" in line 3(G) and itemize difference in 5(M) below) (E-F) ... $ N/A (G)
Other: Manufacturer's Rebate.................................................. $ N/A (H)
　　　　　　　　　　　　　　　　Total Down Payment.......................(A + D + G + H) $ 1,200.00 (3)

4. Unpaid Balance of Cash Price (1 + 2 less 3)............................................. $ 16,614.36 (4)

5. Other Charges Including Amounts Paid to Others on Your Behalf:
A. Cost of Required Property Insurance Paid to Insurance Company*............. $ N/A (A)
B. Fees Paid to Public Officials for Filing a Lien...................................... $ 36.00 (B)
C. Fees Paid to Public Officials for Recording a Satisfaction of a Lien............ $ N/A (C)
D. Fees Paid to Public Officials for Titling the Vehicle............................... $ 72.00 (D)
E. Fees Paid to Public Officials for License and Registration of the Vehicle...... $ 73.00 (E)
F. Fees Paid to _N/A_ for Messenger Services.................... $ N/A (F)
　　Other Charges (Seller must identify who will receive payment and describe purpose)*
G. to N/A _ for lien or lease payoff........................... $ N/A (G)
H. to Phoenix American Administrators, Inc. for Optional GAP Protection........ $ 1,335.00 (H)
I. to THE SELLER _ for DOC. FEE........................ $ 477.00 (I)
J. to TEMP TAG _ for TEMP TAG AGENT FEE.......... $ 20.00 (J)
K. to N/A _ for N/A _ $ N/A (K)
L. to N/A _ for N/A _ $ N/A (L)
M. N/A _ for lien or lease payoff........................... $ N/A (M)
N. Other Optional Insurance Insurance Type N/A _ Term N/A _ Amount $ N/A (N)
　　Total of Other Charges and Amounts Paid to Others on Your Behalf............. $ 2,013.00 (5)

6. Principal Amount Financed (4 + 5)....................................................... $ 18,627.36 (6)
7. Finance Charge................................................................................ $ 12,593.94 (7)
8. Time Balance (6 + 7)......................................................................... $ 31,221.30 (8)

Payment Schedule: One payment of $ 473.05 and 65 payments of $ 473.05 each, beginning 06/09/2026 and due on the dates shown in the Payment Schedule on page 1.

COPY OF ELECTRONIC ORIGINAL

---

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by signing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price $ 4,031.00　　Term: 18,000 Miles/18 Mos. Company: Wynn's Extended Care, Inc.

| _Donald K Chrispen ii_ May 09, 2026 11:45:43 AM EDT | 05/09/2026 | _Acacia Chrispen_ May 09, 2026 11:44:44 AM EDT | 05/09/2026 |
|---|---|---|---|
| Buyer's Signature | Date | Buyer's Signature | Date |

**GAP PROTECTION:** Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 5H of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost $ 1,335.00　　Term: 66 Mos.　　Provider: Phoenix American Administrators, Inc.

| _Donald K Chrispen ii_ May 09, 2026 11:45:43 AM EDT | 05/09/2026 | _Acacia Chrispen_ May 09, 2026 11:52:01 AM EDT | 05/09/2026 |
|---|---|---|---|
| Buyer's Signature | Date | Buyer's Signature | Date |

---

**NOTICE TO BUYER: Do not sign this contract in blank. You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights. Any holder of this consumer credit contract is subject to all claims and defenses which the buyer could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the buyer shall not exceed amounts paid by the buyer hereunder.**

▶ Buyer's Signature: x _Donald K Chrispen ii_ May 09, 2026 11:45:43 AM EDT　　Buyer's Signature: x _Acacia Chrispen_ May 09, 2026 11:52:01 AM EDT

▶ Seller: BAYFRONT AUTOMOTIVE INC　　By: _Tim Hintley_ May 09, 2026 11:54:11 AM EDT　　Title: AGENT

This Contract is signed by the Seller and Buyer(s) hereto this 9th day of May , 2026

**You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.**

▶ Buyer's Signature: x _Donald K Chrispen ii_ May 09, 2026 11:45:43 AM EDT　　Buyer's Signature: _Acacia Chrispen_ May 09, 2026 11:52:01 AM EDT

PENNSYLVANIA CREDIT ACCEPTANCE CORPORATION (09-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.

Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Finance Charge.** This is a simple interest contract. We will apply payments to late charges, finance charges and to the unpaid balance of the Amount Financed and other charges in any manner we choose unless we are required by law to apply payments in a particular order. Finance charges are earned on a daily basis by applying the Contract Rate to the unpaid balance of the Amount Financed for the time such balance is owed. After assignment, the Seller may receive a portion of the finance charges.

**Late or Early Payments.** The Finance Charge, Total of Payments, and Total Sale Price shown on the front of this Contract are based on the assumption that You will make every payment on the date it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if You pay late and less if You pay early.

**Prepayment. You have the right to prepay all or part of Your account balance at any time without a penalty. If You do so You must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of Your payment A minimum finance charge of $10 may be charged if permitted by law.**

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance. Your payment due date will advance by one month each time a standard monthly payment is satisfied in full by a prepayment. You must still make all payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Required Property Insurance.** You must insure Yourself and Us for the term of this Contract against loss of, or physical damage to, the Vehicle with a policy in Your name that is acceptable to Us. We have the right to approve the type and amount of insurance.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Maintenance or Service Contracts.** This Contract may contain charges for optional maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract. Any refund on optional maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- You file for bankruptcy.
- You fail to pay taxes levied against the vehicle.
- You fail to furnish proof of payment of taxes levied against the vehicle.
- You provide false or misleading information on a credit application.
- You use the vehicle for illegal purposes.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable at any time without notice to You. The amount You will owe will be the unpaid part of the Amount Financed plus the earned and unpaid portion of the Finance Charge, and any late charges, and any amounts due because of Your default.

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that after receipt of any notice required by law, any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. To the extent provided by law, You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.

PENNSYLVANIA CREDIT ACCEPTANCE CORPORATION (09-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 3 of 6

Buyer's Initials

Buyer's Initials

The original retail installment contract is assigned to Credit Acceptance Corporation.

Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS (cont.)

**Sale of the Repossessed Vehicle.** Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected in our records, in a reasonable period before the date of the intended sale or transfer (or such other period of time as is required by law). If the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of sale will be figured this way: Our actual and reasonable expenses for taking, storing, repairing, and selling the Vehicle, and any attorney fees and courts, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for it. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

**Servicing and Collection Contacts.** You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**Collection Costs.** If You default and We have to go to court to recover the Vehicle, You will pay the reasonable attorney's fee and court costs, as the law permits. You will also pay any attorney's fees and court costs as a court awards to Us.

WARRANTIES SELLER DISCLAIMS. THE FOLLOWING PARAGRAPH DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT THE VEHICLE MANUFACTURER MAY PROVIDE. THE FOLLOWING PARAGRAPH ALSO DOES NOT APPLY AT ALL IF YOU BOUGHT THE VEHICLE PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD USE. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY WARRANTIES AND THAT THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED BY THE SELLER, COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.

**Delay in Enforcing Rights and Changes of this Contract.** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others. Any change in the terms of this Contract must be in writing and signed by Us. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable.

**Interest After Maturity.** You further agree to pay interest at the Contract Rate stated on page 1 of this Contract or at the highest rate permitted by applicable law, on any amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means the earlier of the date Your final payment is due or the date We accelerate the Contract.

**Judgment Rate.** Interest on any judgment awarded on this Contract will be at the Contract Rate stated on page 1 of this Contract, or at the highest rate permitted by applicable law.

**State of Contracting.** This Contract shall be deemed to have been made and entered into by the parties at the Seller's address shown on page 1.

**Governing Law.** The rights and duties of the parties, and any claims arising out of or related to this Contract, are governed by the law of the state of the Seller's address shown on page 1 of this Contract, except to the extent preempted by applicable federal law.

**Right to Receive Statement of Account.** Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

**Summary Notice Regarding Prepayment and Reinstatement.** You may prepay all or part of the amount You owe under this Contract at any time and without penalty. If You default and We repossess the Vehicle, We may (but need not) allow You to pay the amounts You owe Us to get the Vehicle back and reinstate this Contract.

**If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.**

### ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth on page 4 of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE FINANCIAL SERVICES INC., 25505 WEST TWELVE MILE ROAD, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller: BAYFRONT AUTOMOTIVE INC     By: _Kim Huntley_     Title: AGENT

COPY OF ELECTRONIC ORIGINAL

Buyer's Initials: DRC

Buyer's Initials: AC

PENNSYLVANIA CREDIT ACCEPTANCE CORPORATION (09-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 4 of 6

The original retail installment contract is assigned to Credit Acceptance Corporation.

Not required to mail or fax this copy to Credit Acceptance

# DISPUTE RESOLUTION AGREEMENT

## Binding Individual Arbitration

This Arbitration Clause (this "Clause") describes how a Dispute (as defined below) may be decided and how, under certain circumstances, Disputes will only be decided through binding, individual arbitration. Arbitration is an alternative to a lawsuit in court and there is less discovery and appellate review. In arbitration, a neutral arbitrator decides the case instead of a judge or jury.

In this Clause, "We" and "Us" mean Seller and any assignee of the Contract ("Seller's Assignee") (including Credit Acceptance Corporation). Seller and Seller's Assignee also includes past, present, and future employees, assignees, ancillary product providers, and anybody providing goods or services related to originating, servicing, or collecting amounts due under the Contract. "You" and "Your" means each Buyer named above.

You have a right to opt out of this Clause. To opt out, You must send Us a written notice within 30 days of the Contract date that describes the Contract and tells Us that You are opting out of this Clause. You and any co-Buyer or cosigner must sign the written notice and send it to Us at P.O. Box 5070, Southfield, Michigan 48086-5070. Sending this notice does not affect the rest of the Contract terms. If You do not send this written notice within 30 days of the Contract date, this Clause will be effective as of today and you will not be able to opt out of this Clause. Note that by opting out of the Clause, you are opting out of arbitration only and not the class action waiver and jury trial waiver set forth below.

Dispute means any disagreement or claim related to this Contract or between You and Us. "Dispute" broadly includes contract claims, tort claims and claims for violations of laws, statutes, ordinances, regulations, or any other legal or equitable theories, except "Dispute" does not include:
- any individual claim in Your state's version of small claims court, including any appeal of a small claims court decision;
- any individual claim for collection of Your debt that does not involve a counterclaim or crossclaim;
- any repossession of the Vehicle after You default, or Our right to sell the Vehicle;
- any individual claim You bring to stop Us from repossessing and selling the Vehicle, as long as You do not ask for money; or
- any disagreements or claims concerning intellectual property rights.

Dispute shall include, but not be limited to:
- Disputes that arose before the existence of this Clause (including, but not limited to, claims relating to advertising);
- Disputes that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
- Disputes that may arise after termination of the Contract.

The arbitrator will decide all issues except issues that are reserved for a court herein. Issues for the arbitrator to decide include any Dispute about whether the Contract or any portion of the Contract or this Clause is valid or enforceable, its coverage, or its scope except to the extent reserved specifically for a court herein. If You have opted out of arbitration by following the process set forth above, all issues are for a court of competent jurisdiction to decide.

You and we agree that the Contract evidences a transaction in interstate commerce and that this Clause will be interpreted and enforced in accordance with the Federal Arbitration Act and federal arbitration law (not state arbitration law). To decide a Dispute, the arbitrator must apply the substantive law that governs this Contract, and the arbitrator must honor statutes of limitation and privilege rights. Except as specifically provided in this Clause (e.g., the Waiver of Class Actions and the Mass Arbitration sections), if an arbitrator, or court where applicable, finds that any part of this Clause is invalid or unenforceable, the remainder of this Clause will continue to apply to You and Us. If at any time there is an agreement to arbitrate claims or disputes that is different from this Clause, this Clause will apply instead of that agreement.

## Mandatory Informal Dispute Resolution

If there is a Dispute, the complaining party must give the other party written notice (a "Dispute Notice") before commencing arbitration. The other party shall have at least 60 days to resolve the Dispute. The complaining party must cooperate if the other party makes reasonable requests for information about the Dispute and will not commence arbitration during that 60-day period.

If We have a Dispute, We will send a Dispute Notice to Your address on this Contract (or any updated address You later give Us). Alternatively, We may send You a Dispute Notice by electronic mail or other electronic communication channels if you agree to receive electronic communications from Us. If You have a Dispute, You must mail Us a Dispute Notice to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Southfield, Michigan 48034-8339 (or any updated address We later give You.)

For Your Dispute Notice to be valid You need to do certain things. Your Dispute Notice must include Your Account Number, telephone number, and address. It must explain what the Dispute is about and what You would like us to do. You must sign Your Dispute Notice. If You or We send a Dispute Notice, the other party can ask for a telephone call to discuss the Dispute. Each party (and the party's attorney, if any) must be on the telephone call. **The time spent trying to resolve the Dispute following delivery of a Dispute Notice will not count toward any statutory limitation period.**

You must complete the Dispute Notice requirements before starting arbitration. A court will have authority to enforce these requirements. A court can stop an arbitration from being filed or stop any arbitration that has been filed if these requirements are not followed. Any arbitration demand must state in writing that the steps in this section have been completed.

## Arbitration Procedures

The arbitration of any Dispute shall be administered by and conducted in accordance with the applicable rules of the American Arbitration Association ("AAA"), including the AAA's Consumer Arbitration Rules and Supplementary Rules for Mass Arbitration (where appropriate) ("AAA Rules"), as modified by this Clause. The AAA Rules are available online at www.adr.org. Each party has the right to challenge the application of the AAA's Consumer Arbitration Rules in connection with a Dispute as a threshold administrative issue should it maintain other rules apply (i.e., the AAA's Commercial Arbitration Rules). If the AAA is unavailable or unwilling to administer the arbitration consistent with this Clause, the parties shall agree to have the arbitration administered by National Arbitration & Mediation (NAM) or JAMS under their applicable rules and procedures, including any mass arbitration rules and procedures, as modified by this Clause. The NAM rules can be found at www.namadr.com and the JAMS rules can be found at www.jamsadr.com. If the parties cannot agree, they shall petition a court of competent jurisdiction to appoint NAM, JAMS, or another administrator that will administer the arbitration consistent with this Clause. The AAA Rules or applicable provider's rules shall be referred to herein as "the Rules."

If You are submitting an arbitration demand, you shall send it to Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Southfield, Michigan 48034-8339 (or any updated address We later give You) and follow the Rules for initiating arbitration. If We are submitting an arbitration demand, We shall send it to the most recent address We have on file for You and follow the Rules for initiating arbitration.

By submitting an arbitration demand, the party and counsel represent that, as in federal court, they are complying with the requirements of Federal Rule of Civil Procedure 11(b). The arbitrator is authorized to impose any sanctions available under Federal Rule of Civil Procedure 11 on represented parties and their counsel.

COPY OF ELECTRONIC ORIGINAL

PENNSYLVANIA CREDIT ACCEPTANCE CORPORATION (09-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 5 of 6

The original retail installment contract is assigned to Credit Acceptance Corporation.

Buyer's Initials
Buyer's Initials

The arbitrator may decide that a Dispute can be resolved on written papers without an in-person hearing. However, any Dispute that is part of a Mass Arbitration (defined below) shall have an in-person or video hearing unless the parties agree otherwise. The arbitrator can choose to have any hearing remotely. You and Our representative will personally appear at any hearing (with counsel, if represented). Any in-person arbitration hearing that You attend will be designated in accordance with the Rules and at a place that is reasonably convenient for You. Notice of the time, date and location will be provided to You and Us under the Rules.

An arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. To the fullest extent permitted by applicable law, You and We agree that each may bring claims against the other only in Your or Our individual capacity and not as a plaintiff or class member in any purported class, collective, consolidated, private attorney general, or representative proceeding. Further, unless both You and We agree otherwise, an arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of class, collective, private attorney general, or representative proceeding. An arbitrator must follow and enforce this Agreement as a court would. If, after exhaustion of all appeals, any of these prohibitions on non-individualized injunctive or declaratory relief and class, collective, private attorney general, or representative proceedings are found to be unenforceable with respect to a particular claim or request for relief (such as a request for public injunctive relief), then such a claim or request for relief will be decided by a court of competent jurisdiction, after all other claims and requests for relief are arbitrated. The arbitrator shall issue a reasoned written decision sufficient to explain essential findings and conclusions. The arbitrator shall apply the cost-shifting provisions of Federal Rule of Civil Procedure 68 after entry of an award. Judgment on any arbitration award may be entered in any court of competent jurisdiction, except an award that has been satisfied may not be entered. An award shall have no preclusive effect in any other arbitration or proceeding in which You are not a named party. Arbitration may be requested at any time, even where there is a pending lawsuit, unless a trial has begun, or a final judgment entered.

The arbitrator's decision is final and binding, except for any right to appeal under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"). But if the award is for monetary or other relief that could be worth or cost more than $100,000, You or We can appeal the award. The appeal will be to a three-arbitrator panel through the arbitration organization. The panel's decision will be by majority vote. If there is an appeal of an initial award, "arbitrator" as used in this Clause will also mean the panel. This Clause's section on costs for the initial arbitration will also apply if there is an appeal.

**Costs of Arbitration**
Payment of arbitration fees will be governed by the Rules. You and We agree that the parties have a shared interest in reducing the costs and increasing the efficiencies associated with arbitration. Therefore, You or We may elect to engage with the AAA (or the applicable provider) regarding arbitration fees, and You and We agree that the parties (and counsel, if represented) will work together in good faith to ensure that arbitration remains cost-effective for all parties.

**Additional Procedures for Mass Arbitration**
If You choose to participate in a "Mass Arbitration" (defined below), these Additional Procedures for Mass Arbitration will apply. **The other Sections of this Clause will still apply.**

You agree that these additional procedures will apply if the same counsel or counsel working together or in coordination with one another assert 25 or more similar or coordinated Disputes (including Yours) against Us ("Mass Arbitration"). You and We agree that as part of these procedures, Your and Our counsel shall meet and confer in good faith in an effort to resolve the Disputes, streamline procedures, address the exchange of information, modify the number of Disputes to be adjudicated, and conserve the parties' and the AAA's (or applicable provider's) resources. If Your claim is part of a Mass Arbitration, any applicable limitations periods (including statutes of limitations) shall be tolled for Your Dispute from the time that your Dispute is first submitted to the AAA (or the applicable provider) until Your Dispute is selected to proceed as part of a staged process or is settled, withdrawn, otherwise resolved, or opted out of arbitration pursuant to this provision.

**STAGE ONE**: If there are at least 100 Disputes in the Mass Arbitration, Your counsel and Our counsel will choose 50 Disputes each to be filed and to proceed as individual arbitrations as part of this initial staged process (Either side can decide to have its 50 Disputes chosen randomly. The number of Disputes to be selected to proceed in Stage One can be increased by agreement of counsel for the parties (and if there are fewer than 100 Disputes, all shall proceed individually in Stage One). Each of the cases shall be assigned to a different arbitrator and proceed individually. If a case is withdrawn before the issuance of an arbitration award, another claim shall be selected to proceed as part of Stage One. The remaining Disputes shall not be filed or deemed filed in arbitration nor shall any arbitration fees be assessed or collected in connection with those claims.

If, after this first set of staged proceedings, the parties cannot resolve the Disputes on their own, they will participate in a global mediation of all remaining Disputes. The parties will jointly select a mediator to mediate and attempt to resolve the remaining Disputes (considering the outcome of cases in Stage One.) We will pay the mediator's fee.

**STAGE TWO:** If the remaining Disputes have not been resolved at the end of Stage One, the parties will each choose 100 Disputes to proceed as individual arbitrations. These Disputes may follow a different process if the parties agree to it in writing after mediation. Either party may choose to have its 100 Disputes chosen randomly. The parties can agree to increase the number of Disputes selected to proceed in Stage Two. If there are fewer than 200 Disputes remaining, all will proceed individually in Stage Two.

No more than three cases may be assigned to a single arbitrator to proceed individually unless the parties agree in writing. If a Dispute is withdrawn without both parties' permission, then another Dispute will be selected to proceed as part of Stage Two. The remaining Disputes shall not be filed or deemed filed in arbitration nor shall any arbitration fees be assessed or collected in connection with those claims. After Stage Two is complete, the parties will engage in a mediation of all remaining Disputes. The parties will jointly select a mediator to mediate any Disputes that were not resolved in Stages One or Two. We will pay the mediator's fee.

After the mediation session, if there are more than 200 Disputes that are not settled or withdrawn each remaining Dispute that is not settled or withdrawn will be opted out of arbitration and may proceed in a court of competent jurisdiction on an individual basis consistent with the remaining provisions of the Contract. After the mediation session, if there are 200 or fewer disputes that are not settled or withdrawn, all will proceed individually in arbitration.

A court of competent jurisdiction shall have the authority to enforce the Additional Procedures for Mass Arbitration, including the power to enjoin the filing or prosecution of arbitrations and the assessment or collection of arbitration fees. The Additional Procedures for Mass Arbitration provision and each of its requirements are essential parts of this Clause. If, after exhaustion of all appeals, a court of competent jurisdiction decides that the Additional Procedures for Mass Arbitration apply to Your Dispute and are not enforceable, then Your Dispute shall not proceed in arbitration and shall only proceed in a court of competent jurisdiction on an individual basis consistent with the remainder of the Clause.

**Waiver of Jury Trial; Waiver of Class Actions**
TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, YOU AND WE KNOWINGLY, VOLUNTARILY AND UNCONDITIONALLY WAIVE THE RIGHT TO A JURY TRIAL. YOU AND WE ALSO KNOWINGLY, VOLUNTARILY AND UNCONDITIONALLY WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION IN ARBITRATION OR IN COURT. HOWEVER, THE PARTIES SHALL STILL HAVE THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT. THIS WAIVER OF JURY TRIAL AND WAIVER OF CLASS ACTIONS PROVISION IS AN ESSENTIAL PART OF THIS AGREEMENT AND APPLIES EVEN IF THE CONTRACT IS TERMINATED OR EXPIRES. IF THE CLASS ACTION WAIVER IS FOUND TO BE UNENFORCEABLE, THEN, ONCE AN APPEAL IS OVER, THIS ENTIRE CLAUSE, EXCEPT FOR THE JURY TRIAL WAIVER AND THIS SENTENCE, WILL BE UNENFORCEABLE.

Buyer's Initials _DKC_

Buyer's Initials _AC_

PENNSYLVANIA CREDIT ACCEPTANCE CORPORATION (09-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 6 of 6

The original retail installment contract is assigned to Credit Acceptance Corporation.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | BANKRUPTCY NO. 23-10255 JCM |
| | : | |
| DONALD KENNETH CHRISPEN, II AND | : | HONORABLE JOHN C. MELARAGNO |
| ACACIA TATE CHRISPEN, | : | |
| Debtors | : | CHAPTER 13 |
| | : | |
| DONALD KENNETH CHRISPEN, II AND | : | DATE AND TIME OF HEARING: |
| ACACIA TATE CHRISPEN, | : | MAY 12, 2026 AT 1:30 PM |
| Movants | : | |
| | : | RESPONSES DUE: |
| v. | : | APRIL 27, 2026 |
| | : | |
| NO RESPONDENT | : | |

## CERTIFICATE OF SERVICE

I, Michael S. Jan Janin, Esquire, the undersigned, certify that I served or caused to be served on May 12, 2026 a copy of the Motion for Post-Petition Vehicle Financing and Notice of Hearing with Response Deadline, by electronic notification as shown below on the following:

- Office of the United States Trustee at ustpregion03.pi.ecf@usdoj.gov

- Ronda J. Winnecour at cmecf@chapter13trusteewdpa.com

Respectfully Submitted,

QUINN ELDERKIN LAW FIRM

BY:    /s/ Michael S. Jan Janin
Michael S. Jan Janin, Esquire
PA Id. No. 38880
456 West 6th Street
Erie, PA 6507
Phone:  (814) 833-2222
Facsimile: (814)454-7411
mjanjanin@quinnfirm.com
Attorneys for Debtors

1736168